LAWRENCE A. ORGAN (SBN 175503)
ALLISON J. STONE (SBN 251390)
LAW OFFICES OF LAWRENCE A. ORGAN
404 San Anselmo Avenue
San Anselmo, California 94960
(415) 453-4740 Telephone
(415) 453-3740 Facsimile

Attorneys for Plaintiff
TERESA HORTON

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERESA HORTON, an individual,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>CONCENTRA HEALTH SERVICES, INC. a corporation,<br><br>　　　　Defendants. | Case No. C08-01758 JSW<br><br>**FIRST AMMENDED COMPLAINT FOR DAMAGES:**<br><br>　(1) RETALIATION - FEHA<br>　(2) FAILURE TO PREVENT SEXUAL HARASSMENT AND RETALIATION – FEHA<br>　(3) WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY<br>　(4) UNFAIR BUSINESS PRACTICES – CAL. BUS. PROF. CODE §17200<br><br>**JURY TRIAL DEMANDED** |

Plaintiff alleges as follows:

**INTRODUCTION**

　　1.　　This is an action for damages due to (1) Retaliation - FEHA; (2) Failure to Prevent Sexual Harassment and Retaliation - FEHA; (3) Wrongful Termination in Violation of Public Policy; (4) Unfair Business Practices – Cal. Bus. Prof. Code §17200.

　　2.　　This action arises out of events involving Plaintiff TERESA HORTON and Defendants CONCENTRA HEALTH SERVICES, INC., a corporation, and DOES 1-50. The unlawful conduct which gives rise to this lawsuit occurred within the City of Oakland, California, in the County of Alameda, and therefore jurisdiction is proper.

**THE PARTIES**

3.     Plaintiff TERESA HORTON (hereinafter "Plaintiff" or "HORTON") is informed and believes and thereon alleges that she was employed as a Center Administrator at the Concentra Medical Center in Oakland, CA.  She began working with Defendants on September 3, 2002 and continued to work for Defendant CONCENTRA HEALTH SERVICES, INC., until April 12, 2006.   HORTON entered into employment and was subjected to the wrongful conduct and retaliatory actions alleged herein in Oakland, California.  Plaintiff exhausted her administrative remedies by filing a timely complaint with the California Department of Fair Employment and Housing ("DFEH") against each Defendant and has received a right-to-sue letter.

4.     Plaintiff is informed and believes and thereon alleges that Defendant CONCENTRA HEALTH SERVICES, INC., (hereinafter "CONCENTRA") was, at all times relevant herein, a corporation duly organized and existing under the laws of the State of Texas and licensed to do business in the state of California.  CONCENTRA maintained a medical facility in Alameda County at all times relevant herein.

5.     Plaintiff is ignorant of the true names and capacities of the Defendants sued herein as DOES 1 through 50 therefore sues them by such fictitious names.  Plaintiff is informed and believes and thereon alleges that said defendants are in some manner legally responsible for the activities and damages alleged herein.  Plaintiff will amend this complaint to allege their true names and capacities when ascertained.

6.     Plaintiff is informed and believes and thereon alleges that at all times herein mentioned each of the defendants was acting as the partner, agent, servant, and employee of each of the remaining defendants, and in doing the things alleged herein was acting within the course and scope of such agency and with the knowledge of the remaining defendants.

**GENERAL ALLEGATIONS**

7.     Plaintiff incorporates by reference the factual allegations of paragraphs 1 through 7 above.

8. Defendant removed this case to the United States District Court in the Northern District of California on April 2, 2008 on the basis of diversity jurisdiction.

9. Plaintiff TERESA HORTON began working for Defendant CONCENTRA, as a Center Administrator on September 3, 2002.

10. Ms. HORTON was responsible for managing a health clinic in the Concentra Medical Center in Oakland, CA.

11. Beginning in approximately August 2005, Ms. HORTON was informed by several members of her staff, on numerous occasions, of inappropriate sexual conduct by two doctors, Dr. Steven Schumann and Dr. Hong Zhang, in the office work environment.

12. On September 9, 2005, one of the aforementioned physicians, Dr. Steven Schumann, came into Ms. HORTON'S office on two separate occasions and yelled at Ms. HORTON about the placement of a treadmill and other specialty services in the clinic, as well as Ms. HORTON'S failure to communicate with other clinic employees. One of these incidents occurred in the presence of other employees.

13. On September 14, 2005, Ms. HORTON discussed the above mentioned incidents with her immediate supervisor, Diana Roza. Ms. Roza assured Ms. HORTON that she had Ms. Roza's full support in these matters.

14. Later in September 2005, Jacqueline Strong, Ms. HORTON'S assistant complained to Ms. HORTON, that Dr. Schumann interrupted a conversation with Ms. Strong to meet Dr. Zhang in the hallway and kiss each other. The hallway used to be a concrete bank vault and noises originating in it echo loudly throughout the entire clinic and can be heard by the entire staff.

15. The janitorial staff found an empty bottle of wine in Dr. Schumann's office and left a note for Ms. HORTON saying that the doctors had a picnic in the office and drank wine.

16. Several other employees complained to Ms. HORTON about Dr. Schumann and Dr. Zhang's inappropriate and pervasive sexual conduct, including the fact that the employees

had seen the doctors kissing in the hallway, and that this conduct created a hostile work environment. On September 23, 2005, Ms. HORTON complained, in good faith, to her supervisor Ms. Roza and to the Human Resources manager, Paul Ziembowicz about what Ms. HORTON reasonably believed to be sexual harassment based on Dr. Schumann and Dr. Zhang's inappropriate sexual conduct.

17. In October 2005, Kim Hogan from Human Resources informed Ms. HORTON that CONCENTRA had addressed the issues raised in her complaints. Kim Hogan stated that Dr. Zhang no longer reported to Dr. Schumann and therefore there was no longer a problem with their behavior.

18. Shortly thereafter, Ms. Roza notified Ms. HORTON, that CONCENTRA was moving forward with disciplinary action against Ms. HORTON regarding issues raised by Dr. Schumann.

19. After the communication above, Ms. Roza ceased returning Ms. HORTON'S telephone calls and would not respond to Ms. HORTON'S emails.

20. In November of 2005, Ms. HORTON received a written warning concerning the issues raised by Dr. Schumann as well as some past performance issues. The past performance issues had already been addressed and resolved by Ms. HORTON'S former supervisors Area Administrator Joan Anderson and Director of Operations Linda McCaskill. In fact, Ms. McCaskill had apologized, on behalf of herself and CONCENTRA, for raising the issues and assured her that no future incidents would evolve from them. Ms. McCaskill also informed Ms. HORTON that nothing about the issues would be mentioned in Ms. HORTON'S employment file.

21. Ms. Roza began soliciting negative comments and reports about Ms. HORTON from members of Ms. HORTON'S staff.

22. Ms. Roza undermined Ms. HORTON by assigning tasks to Ms. HORTON'S assistant, Jacqueline Strong, which should have been performed either by Ms. HORTON, or at

her direction. Furthermore, Ms. Roza would often pull members of HORTON'S staff off the floor at busy times and expect HORTON to cover for them on the floor.

23. In November of 2005, Ms. HORTON received an invitation to attend the Annual Center Administrator conference in Dallas, TX. Later, she was told, by Ms. Roza, not to attend and that Ms. HORTON'S assistant Jacqueline would go in her place.

24. Despite the fact that HORTON had been informed by CONCENTRA'S human resources department that the inappropriate sexual behavior of the doctors had been "addressed," the two doctors continued their sexually explicit and offensive behavior at the company holiday party. Another CONCENTRA employee, Rowena Gamboa attended the party and witnessed the two doctors dancing very closely, in a sexually suggestive manner. She stated that they were all over each other, and that it made her feel very uncomfortable. Other employees in attendance commented that the dancing was inappropriate and also made them uncomfortable and they informed Ms. HORTON of these events.

25. In December of 2005, Ms. HORTON received a phone call from Kim Hogan in Human Resources and Ms. Hogan's supervisor, Dani Kendal. During this call, Ms. Kendal made a thinly veiled threat to Ms. HORTON, telling her that HR would help her "transition" and that "she should read the writing on the wall." When Ms. HORTON asked what Ms. Kendal meant by "transition," Ms. Kendal responded that she meant Ms. HORTON should find other employment. This occurred despite the fact that Ms. HORTON'S center was performing very well. Ms. HORTON'S center was performing well above the benchmarks established by CONCENTRA. These benchmarks included standards for financial growth and production, wait times, meeting budgets, number of complaints and customer service. Ms. HORTON also received multiple "thank you" notes or other recognitions of good performance from patients, clients, upper management, and staff.

26. In January of 2006, Ms. Roza held a meeting for all of the Center Administrators (hereinafter "CAs") in the Bay Area/Fresno market, where they were told that all of the centers, including the one under Ms. HORTON's management, had performed well financially. As a

result, all of the CAs were supposed to receive bonuses to be paid in mid March. Ms. HORTON, however, never received her bonus.

27. Following that meeting, Ms. Roza told all of the CAs, and Ms. HORTON'S assistant Jacqueline, that they could go home for the day. Ms. HORTON however, was told to return to the Center in order to participate in a conference call with Ms. Roza and Kim Hogan from HR. Ms. HORTON was informed that her previous write-up was now a final notice.

28. In March of 2006, Ms. Roza instructed the Health Services Manager to solicit, from Ms. HORTON'S staff, a list of things that Ms. HORTON would not, or had not, done for them.

29. Additionally, Ms. Roza scheduled a meeting of the area leadership team, at a time Ms. HORTON was scheduled for "personal time off". Once Ms. Roza realized that Ms. HORTON was not available, she sent out an email in which she stated that the meeting would have to be cancelled because Ms. HORTON was taking time off.

30. Ms. Roza rescheduled the meeting for April 4, 2006 and began the meeting by saying, "Since Teresa is in the center today, we can finally have this meeting because there are things we need to work on to make this center even better than last year and we are not blaming anyone or pointing fingers here we just want a plan to shine." Ms. HORTON believes that this comment was intended to place the blame for the delayed meeting on Ms. HORTON and to make it appear as though she does not spend enough time in the center. Ms. Roza then stated that the point of the meeting was not to "point fingers" or "blame anyone". However, once the meeting got underway, Ms. Roza and others in attendance began criticizing Ms. HORTON and telling her what she needed to correct what they thought was wrong despite the fact that many of the issues were with area's beyond Ms. HORTON'S control.

31. On April 12, 2006, CONCENTRA terminated Ms. HORTON'S employment, took her employee badge and keys and escorted her from the building. The reasons CONCENTRA gave for Ms. HORTON'S termination were patently false.

32. Ms. HORTON is informed and believes that CONCENTRA has engaged in a pattern and practice of retaliating against and terminating employees who complain about workplace conduct.

33. There are other employees of CONCENTRA who have been terminated as a result of complaining about workplace conduct or about violations of CONCENTRA'S policies and/or procedures.

**FIRST CAUSE OF ACTION**
**Retaliation – FEHA - Cal. Govt. Code § 12940 et seq.**
**Against Defendant CONCENTRA HEALTH SERVICES, INC., and DOES 1-50**

34. Plaintiff incorporates by reference the factual allegations set forth in paragraphs 1 through 33 herein.

35. Under California Government Code §12940 et seq., defendants are prohibited from retaliation against Plaintiff for opposing any practices forbidden or made unlawful under California Government Code §12940 et seq.

36. Defendants retaliated against Plaintiff when she complained, in good faith, of the unlawful sexual harassment occurring in Defendants' workplace.

37. Plaintiff is informed and believes and thereon alleges that Defendants could have remedied sexual harassment in their work place, but chose to harass her further by undermining her authority, initiating disciplinary action, failing to investigate adequately, taking no action to stop the sexual harassment, failing to give Plaintiff a bonus and ultimately terminating Plaintiff's employment. Plaintiff was engaged in protected activity for which defendants retaliated.

38. The close proximity in time between when Plaintiff complained of sexual harassment and was disciplined and ultimately terminated creates an inference of retaliation.

39. At all relevant times, Defendants had actual and constructive knowledge of the retaliatory conduct described and alleged herein, and condoned, ratified and participated in the retaliation. As a result of the retaliatory behavior perpetrated and executed by Defendants, and Defendants' failure to protect Plaintiff from retaliatory behavior, Plaintiff has suffered emotional distress, humiliation and embarrassment. As a further proximate result of such conduct, Plaintiff has suffered loss of income, loss of advance and promotions, loss of career opportunity and loss of tangible job benefits, all in amounts to be proven at trial.

40. The conduct of Defendants and/or their agents/employees as described herein was malicious, and/or oppressive, and done with a willful and conscious disregard for Plaintiff's rights and for the deleterious consequences of Defendants' actions. Defendants and/or their agents/employees or supervisors authorized, condoned and ratified the unlawful conduct of the remaining Defendants by continuing to employ unfit employees. Consequently, Plaintiff is entitled to punitive damages against Defendants.

41. By reason of the conduct of Defendants and each of them as alleged herein, Plaintiff has necessarily retained attorneys to prosecute the within action. Plaintiff therefore is entitled to reasonable attorney's fees and litigation expenses, including expert witness fees and costs, incurred in bringing the within action.

**SECOND CAUSE OF ACTION**
**Failure To Prevent Sexual Harassment and Retaliation – FEHA –**
**Cal. Govt. Code § 12940 et seq.**
**Against Defendant CONCENTRA HEALTH SERVICES, INC., and DOES 1-50**

42. Plaintiff incorporates by reference the factual allegations of paragraphs 1 through 41 above.

43. In violation of California Government Code § 12940 et seq., Defendants, and each of them, failed to take all reasonable steps necessary to prevent sexual harassment and retaliation against employees for opposing forbidden practices.

44. In perpetrating the above-described conduct, Defendants, and each of them, engaged in a pattern, policy and practice of sexual harassment. Said conduct on the part of Defendants, and each of them, constituted a policy, practice, tradition, custom and usage which denied Plaintiff protection of California Government Code § 12940 et seq.

45. At all relevant time periods, Defendants, and each of them, failed to make an adequate response and investigation into the conduct of Defendants and the aforesaid pattern and practice, and thereby established a policy, custom, practice or usage within the organization of Defendants, which condoned, encouraged, tolerated, sanctioned, ratified, approved of, and/or acquiesced in sexual harassment towards Plaintiff.

46. At all relevant time periods there existed within the organization of Defendants, and each of them, a pattern and practice of conduct by their personnel which resulted in sexual harassment, and/or retaliation, including but not necessarily limited to, conduct directed at Plaintiff or made in Plaintiff's presence.

47. At all relevant time periods there existed within the organization of Defendants, and each of them, a pattern and practice of conduct by personnel which resulted in retaliation toward anyone, including but not limited to Plaintiff, who complained of conduct that did not conform to Defendant's policies and procedures.

48. Defendants did not have an adequate sexual harassment policy and did not provide adequate sexual harassment training with respect to its employees and managers.

49. Defendants, and each of them, knew or reasonably should have known that the failure to provide adequate education, training, and information as to their personnel policies and practices regarding sexual harassment, and retaliation for complaining or resisting sexual harassment, would result in sexual harassment and retaliation against

employees including but not limited to Plaintiff, for complaining or resisting the same.

50. The failure of Defendants, and each of them, to provide any or adequate education, training, and information to personnel concerning policies and practices regarding sexual harassment, and retaliation for complaining of or resisting the same, constituted deliberate indifference to the rights of employees, including but not limited to those of Plaintiff, under California Government Code § 12940 et seq.

51. By reason of the conduct of Defendants and each of them as alleged herein, Plaintiff has necessarily retained attorneys to prosecute the within action. Plaintiff therefore is entitled to reasonable attorney's fees and litigation expenses, including expert witness fees and costs, incurred in bringing the within action. As a result of Defendants and each of their actions, Plaintiff sustained economic damages to be proven at trial. As a further result of Defendants' and each of their actions, Plaintiff suffered emotional distress; resulting in damages to be proven at trial.

52. The conduct of Defendants and/or their agents/employees as described herein was malicious, and/or oppressive, and done with a willful and conscious disregard for Plaintiff's rights and for the deleterious consequences of Defendants' actions. Defendants and/or their agents/employees or supervisors authorized, condoned and ratified the unlawful conduct of the remaining Defendants. Consequently, Plaintiff is entitled to punitive damages against Defendants.

### THIRD CAUSE OF ACTION
**Wrongful Termination In Violation Of Public Policy**
**Against Defendant CONCENTRA HEALTH SERVICES, INC. and DOES 1-50**

53. Plaintiff hereby incorporates by reference the factual allegations set forth in paragraphs 1 through 52 herein.

54. Plaintiff complained in good faith about what she perceived to be sexual harassment in the workplace. Plaintiff reported the sex harassment but Defendant failed to take proper action to protect plaintiff and retaliated against her after she

complained. Defendant also failed to adequately prevent harassment and retaliation against Plaintiff. Furthermore, Defendant acted in an unfair manner towards Plaintiff.

55. Such conduct violates the Public Policy of the State of California as put forward in the Fair Employment Housing Act, the California Constitution, and other statutes and provisions.

56. As a result of said conduct, plaintiff has suffered general and exemplary damages.

57. The conduct of Defendants and/or their agents/employees as described herein was malicious, and/or oppressive, and done with a willful and conscious disregard for Plaintiff's rights and for the deleterious consequences of Defendants' actions. Defendants and/or their agents/employees or supervisors authorized, condoned and ratified the unlawful conduct of the remaining Defendants by continuing to employ unfit employees. Consequently, Plaintiff is entitled to punitive damages against Defendants.

## FOURTH CAUSE OF ACTION

**Unlawful Business Practices – Cal. Bus. Prof. Code §17200 Against Defendant CONCENTRA HEALTH SERVICES, INC. and DOES 1-50.**

58. Plaintiff hereby incorporates by reference the factual allegations set forth in paragraphs 1 through 57 herein.

59. Beginning at an exact date unknown to plaintiff but at least since 2005, Defendant CONCENTRA HEALTH SERVICES, INC. has committed acts of unfair business practices, as defined by Business and Professions Code §17200, by engaging in the practices alleged above.

60. The acts and practices described above constitute violations of the aforesaid laws and statutes, therefore such practices are unlawful business practices within the meaning of Business and Professions Code §17200.

61. As a direct and proximate result of the aforementioned acts, defendant CONCENTRA HEALTH SERVICES, INC. received and continues to hold money belonging to Plaintiff.

62. Plaintiff is entitled to attorney fees and costs pursuant to the common fund equitable doctrine, Code of Civil Procedure Section 1021.5 and the substantial benefits doctrine.

### PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF prays for relief as follows:

1. For general damages according to proof, however, no less than the jurisdictional limit of this court;

2. For special damages in amounts according to proof;

3. For punitive damages in amounts according to proof;

4. For attorneys' fees as provided by law;

5. For restitution damages in amounts according to proof;

6. For prejudgment, post-judgment and other interest as provided by law;

7. For cost of suit incurred herein; and

8. For such other and further relief as the Court deems fair and just.

Dated: April 22, 2008                            THE LAW OFFICES OF
                                                 LAWRENCE A. ORGAN

                                                 _____
                                                 LAWRENCE A. ORGAN
                                                 Attorney for Plaintiff
                                                 TERESA HORTON

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial.

Dated: April 22, 2008

THE LAW OFFICES OF
LAWRENCE A. ORGAN

_____

LAWRENCE A. ORGAN
Attorney for Plaintiff
TERESA HORTON